IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ELLIOTT CONE and NANCY CONE,          )
individually and on behalf of          )
ELLIOTT HAMILTON CONE, III,            )
                                       )
                Plaintiffs,            )
                                       )
       v.                              )     1:06CV00579
                                       )
RANDOLPH COUNTY SCHOOLS                )
BOARD OF EDUCATION,                    )
                                       )
                Defendant.             )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

Before the court is the motion for attorneys' fees and costs by Plaintiffs Elliott and Nancy Cone ("Cones") as a result of being declared "prevailing parties" in their litigation against the Randolph County Schools Board of Education ("RCS") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., regarding an administrative determination with respect to their son. (Doc. 48.) For the reasons set forth below, the motion will be granted in substantial part.

I.   **BACKGROUND**

The history of this litigation, including an earlier lawsuit, is set out in prior opinions of the court and will be recounted here only as pertinent to the present motion.

The Cones' son suffers from severe deficits. He was placed at the Benedictine School for Exceptional Children in Maryland ("Benedictine"), a full-time residential placement, under an Individual Education Plan ("IEP") developed by RCS. In July 2001, over the Cones' objection, RCS amended the IEP to place him at the Partners in Autism Treatment and Habilitation ("PATH") program, an in-state residential program located at the Murdoch Center in Butner, North Carolina. The Cones objected to that decision, unsuccessfully challenged it in an administrative action, and filed suit in this court. On February 6, 2004, this court (Judge Osteen, Sr.) held that RCS complied with the IDEA and could provide Elliott a "free appropriate public education" ("FAPE") through PATH. That holding was affirmed by the United States Court of Appeals for the Fourth Circuit, and the Supreme Court denied certiorari in January 2005. Cone ex rel. Cone v. Randolph County Sch., 302 F. Supp. 2d 500 (M.D.N.C. 2004), aff'd, 103 F. App'x 731 (4th Cir. 2004), cert. denied, 543 U.S. 1124 (2005).

At the time of the Supreme Court's action, the Cones' son resided at Benedictine pursuant to the IDEA's "stay put" provision. In early 2005, RCS contacted the Cones about placing their son at PATH, in accordance with this court's decision, but the Cones resisted, believing that Benedictine was the only appropriate placement for him.

2

In September 2005, the Cones unilaterally placed their son at Benedictine. On September 14, 2005, the Cones finally submitted a PATH application but attached a thirteen-page letter detailing reasons why their son should be allowed to remain at Benedictine, which this court found effectively repudiated the request. Later that month, the parties convened an IEP meeting, and by October 10, 2005, RCS finalized an IEP (the "October IEP") that placed the Cones' son at a special but non-residential program at Trinity High School in North Carolina ("Trinity"). The Cones objected to the October IEP and filed an administrative challenge the next day. Their son attended Trinity briefly, but the Cones withdrew him in early November 2005, and as far as the record shows he remained at home apparently until he returned to Benedictine on Medicaid in January 2007. (Doc. 32 at 1 n.1; Doc. 54 at 6 n.3.)

The Administrative Law Judge ("ALJ") ruled on April 18, 2006, in favor of the Cones, finding as follows: Trinity did not provide FAPE; RCS was obligated to pay tuition for the Cones' son at Benedictine from May 6 through October 13, 2005; and RCS was ordered to pay for Benedictine until PATH became available. The State Review Officer ("SRO") agreed that Trinity did not provide a FAPE but concluded that reimbursement for Benedictine tuition was required only through July 2005.

The Cones appealed the SRO determination not to award additional tuition reimbursement (through October 13, 2005) to this court, and RCS counterclaimed for a judgment reversing the SRO decision that Trinity provided a FAPE. On October 20, 2006, this court (Judge Osteen, Sr.) denied the Cones' request for a mandatory injunction to place their son at Benedictine and ruled that the "stay put" period during which he could remain at Benedictine pending resolution of the prior litigation expired at the end of July 2005. Cone v. Randolph County Sch. Bd. of Educ., No. 1:06CV00579, 2006 WL 3000445 (M.D.N.C. Oct. 20, 2006).

On September 22, 2009, this court denied the Cones' request for additional tuition reimbursement, thus confirming the award for the period May 6 through July 2005, and affirmed the finding that Trinity did not provide a FAPE. Cone v. Randolph County Sch. Bd. of Educ., 657 F. Supp. 2d 667 (M.D.N.C. 2009) ("Opinion and Order"). The Cones were declared prevailing parties at least to the extent they prevailed in obtaining reimbursement through the July 2005 "stay put" period determined by this court. Id. at 682-83. This triggered their right to the present request for reasonable attorneys' fees and costs. Id. The court stated it was unclear whether the Cones would be entitled to attorneys' fees related to their administrative challenge of the October IEP, leaving them free to make their

4

case upon their fee application. Id. The parties report they have met and conferred pursuant to local rule 54.2 in an attempt to resolve the fee dispute but were unable to reach agreement.

The Cones request reimbursement for all attorneys' fees dating to November 17, 2005, the date they retained counsel for the administrative challenge of the October IEP; they exempt from their request reimbursement for activity relating to their unsuccessful effort to obtain a "stay put" at Benedictine after July 2005. In their request, the Cones have segregated the fees and costs related to the administrative challenge of the October IEP from the subsequent litigation before this court and seek $91,475.00 in fees and $2,220.05 in costs for the former and $29,750.00 in fees and $810.68 in costs related to the latter. (Doc. 48.) The total sought, therefore, is $124,255.73.

Supporting the request are the affidavits of J. David James ("James") and Seth R. Cohen ("Cohen"), attorneys for the Cones. These affidavits reviewed the work done and costs incurred and included time records, with narratives, as well as certain correspondence and a 1998 state court opinion from a case on which James worked. Submitted also are affidavits of A. Frank Johns ("Johns") and Robert M. Elliot ("Elliot"), members of the North Carolina State Bar. Mr. Johns represents he has litigated "countless cases under IDEA" and specialized in special education for 25 years, and Mr. Elliot states that he has

5

"handled a number of claims on behalf of claimants under" the IDEA. (Doc. 48, James Aff. Exs. D & E.) Both opine that the hours claimed were reasonable and the work necessary to represent the Cones' interests.

RCS opposes any fee recovery related to the Cones' challenge to the October IEP. It also challenges the hours claimed and the hourly rates. It further argues that any success obtained on the tuition reimbursement claim was only partial, contending that the favorable ruling that the October IEP did not provide a FAPE was only a "technical success" and would not have been at issue had the Cones complied with this court's prior rulings. Therefore, RCS argues, any attorney fee award should be reduced by fifty to seventy-five percent. (Doc. 53.)

The motion has been fully briefed and is ready for resolution.

## II. ANALYSIS

The IDEA permits an award of reasonable attorneys' fees to a prevailing party. 20 U.S.C. § 1415(i)(3)(B)(i). The court may award fees not only in the case before it but also with respect to the administrative proceeding. Sch. Bd. of Prince William County v. Malone, 662 F. Supp. 999, 1001 (E.D. Va. 1987); see Combs v. Sch. Bd. of Rockingham County, 15 F.3d 357, 359 n.10 (4th Cir. 1994) ("The IDEA allows parties to bring an

6

independent action in federal court solely to recover fees incurred in an administrative proceeding."); 20 U.S.C. § 1415(i)(3)(B) (referencing fees in any "action or proceeding"). The fee applicant bears the burden of establishing entitlement to an award and documenting the hours appropriately expended as well as hourly rates. Hensley v. Eckerhart, 461 U.S. 424, 437 (1983); see AD ex rel. SD v. Bd. of Pub. Educ. of City of Asheville, 99 F. Supp. 2d 683, 690 (W.D.N.C. 1999) (hours expended); Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990) (reasonable rate) (assessing fees under 42 U.S.C. § 1988).

### A. Attorneys' Fees Under IDEA

Under the IDEA, a court, "in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). The court previously found the Cones to be prevailing parties, although noting that they did not prevail on all significant issues. Cone, 657 F. Supp. 2d at 681-83. Once a party crosses the statutory threshold to a fee award of some kind, this court has discretion to determine the amount of the award. J.D. ex rel. Davis v. Kanawha County Bd. of Educ., 571 F.3d 381, 387 (4th Cir. 2009) (citing Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 789-90 (1989)). "In Hensley, the Supreme Court noted that '[t]here is no precise rule or formula'

7

for determining the amount of attorneys' fees, and that district courts 'necessarily [have] discretion' in such matters." Kanawha County Bd., 571 F.3d at 387 (quoting Hensley, 461 U.S. at 436-37).

In determining a reasonable fee, the court employs the twelve-factor test set out by the Supreme Court in Hensley:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Hensley, 461 U.S. at 430 n.3 & 434 (adopting same from Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)); see Daly v. Hill, 790 F.2d 1071, 1075 n.2 & 1077 (4th Cir. 1986) (noting in civil rights action that the Fourth Circuit "has long considered the Johnson factors to be the appropriate standards" to guide a district court in awarding attorneys' fees).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." Hensley,

8

461 U.S. at 433.[1]   This is the lodestar approach, which is employed in IDEA cases as well as civil rights cases generally, subject to specific limitations in 20 U.S.C. § 1415(i)(3)(B)-(G).  See Kanawha County Bd., 571 F.3d at 387 (referencing and quoting Hensley); Bd. of Pub. Educ. of City of Asheville, 99 F. Supp. 2d at 687 (applying Hensley and related cases in IDEA context).  Thus, the court must first calculate reasonable hours and a reasonable hourly rate.  If the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, however, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee.  Hensley, 461 U.S. at 434 & 440.

The court must also inquire into whether the plaintiff achieved a level of success that makes the hours expended a satisfactory basis upon which to make a fee award.  When a lawsuit consists of related claims, a plaintiff winning substantial relief should not have his or her attorneys' fees reduced simply because the district court did not adopt each contention raised.  If a plaintiff attains only partial or

---

[1]  The Cones argue that "[o]nly if 'special circumstances' exist which would make such an award unjust, is the lodestar amount not appropriate."  (Doc. 50 at 4.)  The "special circumstances" doctrine, however, does not relate to when a court may find the lodestar amount "not appropriate" but rather to situations where a prevailing party may be denied any fee at all.  See Hensley, 461 U.S. at 429; see also Doe v. Bd. of Educ. of Baltimore County, 165 F.3d 260, 264-65 (4th Cir. 1998) ("special circumstances" doctrine barred award to attorney-parent representing own child).

limited success, however, the lodestar may be an excessive amount even where the plaintiff's claims were interrelated, non-frivolous, and raised in good faith. In exercising its discretion with respect to partial or limited success, the court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." Hensley, 461 U.S. at 434-37 & 440.

In the end, the most critical factor in determining a fee award is the "degree of success obtained." Hensley, 461 U.S. at 436. In evaluating the degree of success, the court does not simply take "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." Id. at 435 n.11.

## B. Determination of Reasonable Attorneys' Fees

In assessing a reasonable attorneys' fee, the court will first determine the number of hours reasonably expended by the Cones' attorneys and reasonable hourly rates. Any adjustment to the initial lodestar calculation will then be considered.

### 1. Reasonable Number of Hours

In seeking a fee award, a plaintiff should "submit evidence supporting the hours worked." Hensley, 461 U.S. at 433. Time that is "excessive, redundant, or otherwise unnecessary" must be reduced or excluded to reflect the number of hours which would be properly billed to a client. See Hensley, 461 U.S. at 434;

10

<u>Daly</u>, 790 F.2d at 1079. The <u>Johnson</u> factors most applicable to determining the reasonable number of hours in this case are (1) time and labor required to litigate the lawsuit and (2) the novelty and difficulty of the questions.

The Cones argue that 428.2 hours is reasonable for the work of James (309.2 hours for the administrative proceeding and 119 hours for the lawsuit) and 63 hours for the work of Cohen. Both affidavits of practicing attorneys experienced in IDEA cases, Johns and Elliot, opine, although in conclusory fashion, that the hours spent by the Cones' counsel were reasonable and were billed at reasonable rates. RCS challenges the billing records generally as "block billing" that fails to indicate the specific time spent on discrete matters and characterizes the time spent on certain matters as excessive. However, RCS has presented no extrinsic evidence as to the reasonableness of the rates or time incurred.

The Cones did not prevail on their efforts to obtain a "stay put" placement at Benedictine either during the administrative proceeding or before this court. In their fee motion, they state that time related to these efforts has been excluded from their request. (Doc. 48 at 2 (stating that "[p]laintiffs do not seek attorney fees for the 36.25 hours expended on Plaintiff's Motion for Preliminary Injunction, which was denied".) In their reply brief, they note that time James

11

spent at the administrative level on the unsuccessful "stay put" issue "was minimal, only 15 hours." (Doc. 54 at 5.) A review of the time records shows that the 15 hours is not contained in the 36.25 hours previously deducted from the Cones' request. The court will, therefore, deduct 15 hours from James' time.

RCS argues that the Cones' attorneys spent an excessive number of hours preparing the proposed final decision following the administrative due process hearing (33.8 hours) as well as several briefs, including the response to RCS' motion for summary judgment (29 hours) and reply brief (17.8 hours). RCS' argument is based, in large measure, on the grounds that much of the underlying facts and circumstances, which had been litigated over the years, were "fairly well-established" and many of the legal issues had been fully litigated. (Doc. 53 at 12-13.) RCS does not, however, proffer a proposed reasonable amount of time for this work, nor does RCS state the time its attorney spent on preparing related briefs by way of comparison. The Cones, in their reply, note that the proposed final decision was a 41-page document which had to be prepared in a two-week period with findings related to 20 witnesses and 119 exhibits. Although the hours expended in preparing the documents may tend toward the high side, they are by no means unreasonable. Further, the documents did not relate to issues tangential to the proceedings but arose at critical or dispositive points. The court will not

reduce any time described in this paragraph for purposes of calculating the initial lodestar. The court will, however, consider this time when undertaking a review of the degree of the Cones' success.

The submitted hours were not duplicative. James performed most of the work, with Cohen assisting in the administrative proceeding primarily with respect to those witnesses for whom he assumed responsibility. Although James necessarily spent some time to "get up to speed" on the history of the litigation, those hours were necessary and not duplicative. Further, the court cannot characterize travel time relating to reviewing and obtaining files from the prior proceeding to be unreasonable under the circumstances of this case.

The issues raised in the administrative proceeding were not novel, as the Cones admit. The Cones argue, however, that the questions raised were difficult and the statutory concepts lengthy and unknown to most practicing attorneys. The court finds that, although the IDEA can be complicated, the questions raised here were not unusually difficult. For purposes of the initial lodestar calculation, the court determines that the reasonable hours component is 413.2 hours for James and 63 hours for Cohen.

13

## 2. Reasonable Hourly Rates

A reasonable hourly rate "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished. No bonus or multiplier may be used in calculating the fees awarded under this subsection." 20 U.S.C. § 1415(i)(3)(C).

The Cones assert that reasonable hourly rates are $250 for James and $225 for Cohen. Johns opines that these rates are "well within the boundaries for hourly rates charged" in IDEA cases. Elliot opines that the hourly rates were not only reasonable "but low," given the experience and competence of the Cones' attorneys, and were "well within the rates charged in civil litigation" before this court by attorneys with reasonably comparative skill, experience, and reputation. The Cones also present a 1998 state court opinion and order involving claims under federal employee benefits and common law in which the court found the reasonable rate for James to be $250 per hour for work undertaken from late 1995 to early 1998.[2] (Doc. 48, James Aff. Exs. C, D & E.)

RCS argues that the Cones' evidence indicates that the attorneys had very limited experience in the special education

---

[2] In addition, the Cones submitted several examples of total fee awards in purported similar cases. The court accepts those cases as a demonstration that, when warranted, substantial fees may be reasonable under 20 U.S.C. § 1415(i), but that determination turns upon the facts of each case.

area.  (Doc. 53 at 11.)  The Cones assert that overall legal experience may merit a higher hourly rate because "most important legal skills are transferable."  (Doc. 54 at 2 (quoting I.B. v. N.Y. City Dep't of Educ., 336 F.3d 79, 81 (2d Cir. 2003).)  The Cones also note that RCS has failed to suggest or present evidence of what a reasonable rate should be.

James, admitted to the bar in 1971, has extensive experience in state and federal litigation, including oral argument before the United States Supreme Court.  Cohen, who had been admitted to the bar for fifteen years at the time of his work, is an experienced litigator in state and federal courts and has taught agency law as an adjunct professor at the Wake Forest School of Law.  RCS has provided no evidence rebutting the evidence that James and Cohen enjoy reputations for the quality of their legal skills and work.  While the record does not reflect that James and Cohen have extensive experience in IDEA matters, they have extensive litigation experience, much of which was employed in the administrative proceeding below.  The court finds, therefore, that an hourly rate of $250 for James and $225 for Cohen are reasonable under all the circumstances of this case.  See JP ex rel. Peterson v. County Sch. Bd. of Hanover County, Va., 641 F. Supp. 2d 499, 516-17 (E.D. Va. 2009) (hourly rate of $300 reduced from the prevailing market rate of $350 to reflect lead counsel's lower level of experience in IDEA

15

cases as well as his customary rate of $250 per hour; hourly rate of $190 per hour for associate with three years of experience found reasonable); cf. Certain v. Potter, 330 F. Supp. 2d 576 (M.D.N.C. 2004) (finding in Title VII retaliation and hostile work environment case that, in line with the attorney's skill level and twelve years of experience, $170 per hour was reasonable based on affidavits presented, typical fees awarded in similar cases, a 1998 North Carolina Bar Association Economic Survey, the court's knowledge of typical fees in the area, and the attorneys' skill and experience).

These rates will be applied in calculating a lodestar amount.

### 3. Lodestar Calculation and Adjustment

With the determination of reasonable billing rates and of hours reasonably expended, the initial calculation of the lodestar becomes straightforward. Multiplying James' reduced time of 413.2 hours by $250 per hour results in $103,300.00, and multiplying Cohen's time of 63 hours by $225 per hours results in $14,175.00. The sum of these two amounts renders an initial lodestar of $117,475.00.

In this case the Cones achieved only partial, limited success, both with respect to tuition reimbursement and the determination that the October IEP did not provide a FAPE. While this court found that the October IEP did not provide the

16

Cones' son with a FAPE and ordered tuition reimbursement through July 2005, there were issues the Cones litigated in the administrative proceeding and in this court upon which they did not prevail in addition to the "stay put" issue. In all, the Cones asserted fourteen issues before the ALJ, and the SRO narrowed consideration to five. (Doc. 1-1 at 1-3; Doc. 1-2 at 1-3.) These issues involved detailed consideration in an administrative hearing spanning at least ten days with approximately 120 exhibits admitted. (See, e.g., Doc. 1, Ex. A at 1-2.) The Cones eventually prevailed on approximately half of the issues resolved by the SRO.

Moreover, the Cones' success in defeating the October IEP, even in this court, was less than complete. RCS argues that the Cones' administrative proceeding and this litigation were crafted solely to doggedly seek a permanent placement at Benedictine in the face of this court's orders that PATH provided a FAPE. RCS concludes, therefore, that the Cones' petition and this lawsuit were wholly unnecessary because, as the SRO noted, "[h]ad the parents acted reasonably following the end of the previous litigation, [their son] would be receiving a FAPE through the PATH program at this point in time." (Doc. 1, Ex. B at 17.) Instead, RCS argues, the Cones unilaterally sent their son to Benedictine in September 2005 and, when Trinity did not work out, simply chose to allow him to remain home without

17

any services instead of coordinating with RCS to modify the October IEP to accommodate the home component. The Cones respond that this court has already determined that there was no showing that PATH was available for their son in 2005 and thus that their challenges were warranted. In support of this statement the Cones select three statements from the Opinion and Order:

> It has not been shown that a place for Elliott was available at PATH during this period.

Cone, 657 F. Supp. 2d at 675 n.9.

> In any event, RCS has not shown that an opening at PATH was available to Elliott immediately upon the expiration of Elliott's IEP on May 6, 2005.

Id. at 675.

> RCS points to the fact that in the Spring of 2001, when it initially proposed placement at PATH, an opening was available . . . . That is too remote for the determination of whether PATH was available four years later after RCS terminated funding for Elliott at Benedictine.

Id. at 675 n.10.

Addressing the last point first, the Cones misapprehend the court's statements with respect to availability at PATH. The quotations relate specifically and exclusively to the period beginning early May 2005 (the end of the IEP in effect for that school year) to the end of July 2005. The reference in the quotation to "this period" was clearly to the period ending July 2005, and all three quotations appear in the section of the

18

Opinion and Order addressing tuition reimbursement for, and thus entitled, "May 6 through July 2005."

It is not clear on this record, and the court cannot speculate as to, what result would have obtained had the Cones applied to PATH in early 2005, after the Supreme Court denied certiorari. Though the SRO stated that but for the Cones' failure to have "acted reasonably" following the end of the prior litigation their son would be receiving a FAPE through PATH, there is no evidence this was a factual finding based on any record evidence. Indeed, it is contained in the SRO's "discussion" section of the decision, separate from his findings of fact or conclusions of law. Cf. County Sch. Bd. of Henrico County, Va. v. Z.P., 399 F.3d 298, 310 (4th Cir. 2005) (hearing officer's factual findings entitled to deference where supported by record evidence). What is clear is that the denial of certiorari was a near certainty and that the Cones, who had been resisting placement outside Benedictine since 2001, should have anticipated the need to complete a PATH application in a timely manner. Instead, as this court found, they chose to intentionally delay beginning the PATH application process until July 2005, four months after RCS asked them to do so. (Doc. 1, Ex. B at 7, ¶ 20.) Moreover, their PATH application, once submitted in September 2005, contained their personal plea not to have their son placed there, thus repudiating the request.

What is relevant to the fee request is what occurred in October 2005. This court found that the Cones' unilateral selection of Benedictine as a private placement in September 2005 and their refusal to consent to the placement by intentionally delaying their application to PATH left them without a "stay put" placement at Benedictine after July 2005. Thus, RCS had no obligation to provide a FAPE for September through October 13, 2005. Once the Cones returned their son to North Carolina from Benedictine, however, RCS' duty to provide a FAPE arose. RCS attempted to discharge this duty with the October IEP at Trinity, which this court found was inadequate (at least in the October IEP's form at the time).[3] RCS argues that it modified the October IEP to provide a home component and thus a FAPE, yet the Cones refused to sign the revised IEP. (Doc. 53 at 6-7.) The Cones argue that RCS' modifications were merely "cosmetic." (Doc. 54 at 6 n.3.) This issue was never joined, however, because the Cones simply withdrew their son from any placement whatsoever until over one year later, when he became eligible for Medicaid and was returned to Benedictine. (Id.) Thus, on this record, the court finds that because RCS failed to provide a FAPE with the October IEP (and there is no

---

[3] The court cannot say, because the record does not reflect, whether a position at PATH would have been available in October 2005 had the Cones acted in accordance with this court's order from the prior litigation. What is clear is that when the Cones finally made a valid application for PATH in January 2006, their son was put on a wait list.

evidence that in October 2005 PATH was available), the Cones were justified in challenging the October IEP as violative of the IDEA.

The court's review of the administrative record and the pleadings in this case make clear, however, that the Cones' goal in challenging the October IEP was placement at Benedictine -- not the relief they ultimately obtained: a finding that the October IEP, while not providing a FAPE, could be modified through inclusion of a home component to provide a FAPE. Thus, the Cones failed to achieve placement at Benedictine, both through the administrative proceeding and in this litigation. The court, therefore, will take into account the Cones' partial success with respect to their challenge to the October IEP.

As to the tuition reimbursement claim, the Cones prevailed in obtaining reimbursement for their son's attendance at Benedictine for the period from May 6, 2005, through July 2005, in the amount of $30,624.74, but lost for the period of September through October 13, 2005, in the amount of $13,516.00. Cone, 657 F. Supp. 2d at 674-76. The court denied reimbursement because of the Cones' unilateral selection of Benedictine as a private placement and their refusal to consent by intentionally delaying their application to PATH, which relieved RCS of any obligation to provide a FAPE for September through October 13, 2005. Although some underlying facts and legal arguments were

21

common to both time periods, other facts and legal arguments were not. The court, therefore, will take into account the Cones' partial success with respect to their tuition reimbursement claim.

The block-billed time records provided by the Cones do not permit identification of specific hours that relate solely to work on issues on which they prevailed. Thus, the court will make a proportional reduction in the fee request, which is appropriate in IDEA cases. See, e.g., Bd. of Educ. of Montgomery County v. Shell, No. PJM 05-118, 2009 WL 2507415 (D. Md. Aug. 13, 2009) (one-third reduction in requested fees based on plaintiff eventually prevailing on only two-thirds of original claim); C. v. Maine Sch. Admin. Dist. No. 6, 582 F. Supp. 2d 65 (D. Me. 2008) (50% fee award through court proceedings based on mixed success); Bd. of Educ. of Frederick County v. I.S. ex rel. Summers, 358 F. Supp. 2d 462, 466 (D. Md. 2005) (10% fee reduction for partial success at due process hearing with respect to one attorney); see also Kanawha County Bd., 571 F.3d at 387 (affirming fee award reduced by nearly 70% of requested fees in case where parents did not prevail on their most significant claim; finding award not excessive); cf. Potter, 330 F. Supp. 2d at 587-88 (20% reduction in attorney hours claimed in hostile work environment case due to employee's limited success on specific claim and overall).

22

Having considered all of the above, the court finds that a thirty-five percent (35%) reduction in claimed attorneys' fees is reasonable and appropriate. The fees which the court will award, therefore, will be sixty-five percent (65%) of $117,475.00, for a total of $76,358.75.[4]

## C. Determination of Costs

As the prevailing party, the Cones are entitled to an award reimbursing reasonable costs incurred in the administrative proceeding and in proceedings before this court. Fees relating to an expert witness, however, may not be recovered under the IDEA. <u>Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy</u>, 548 U.S. 291 (2006). Conceding that expert witness fees are not recoverable, the Cones exclude $7,564.80 from their request for costs.

The Cones list their costs by category, seeking a total of $3,030.73. RCS does not challenge their reasonableness, yet the court notes that they seek reimbursement for "facsimile" charges that appear to represent per-page assessments for faxes sent or

---

[4] The court has considered the remaining <u>Johnson</u> factors, including the Cones' assertions that their counsel had lost opportunity costs by working on the case, the fee was contingent save for a limited retainer, IDEA cases have "short time frames," and the case was undesirable within the legal community. The court finds that on this record these factors are fairly compensated at the rates awarded given the hours to be compensated, with the exception of the contingent nature of the representation, which favors the Cones' counsel. The court finds the one-time relationship between the Cones and their counsel does not affect the determination of a reasonable fee.

23

received. Fax machines are common overhead that firms must bear, and this court will not allow markups for that service. Having reviewed the costs sought, the court finds the amount reasonably incurred to be $2,866.73.

## III. CONCLUSION

For the reasons set forth herein,

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Attorney Fees and Costs (Doc. 48) is GRANTED IN PART AND DENIED IN PART. The Cones shall recover attorneys' fees of Seventy-Six Thousand Three Hundred Fifty-Eight and 75/100 dollars ($76,358.75) and costs of Two Thousand Eight Hundred Sixty-Six and 73/100 dollars ($2,866.73), for a total of Seventy-Nine Thousand Two Hundred Twenty-Five and 48/100 dollars ($79,225.48).


                                    /s/   Thomas D. Schroeder
                                United States District Judge

April 19, 2010